24

**FILED**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SEP 3 0 2005

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

QUINTIN JOHNSON,

      Petitioner,

Civil No. 04-CV-72761-DT
HONORABLE PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

v.

ANDREW JACKSON,

      Respondent,

_____/

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, AND (2) A CERTIFICATE OF APPEALABILITY

Quinton Johnson, ("petitioner"), presently confined at the Mound Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Nicholas J. Vendittelli, petitioner challenges his conviction for four counts of first-degree felony murder, M.C.L.A. 750.316; M.S.A. 28.548. For the reasons stated below, petitioner's application for writ of habeas corpus is **DENIED.**

### I.  BACKGROUND

Following a joint trial with co-defendant Julia Wigley in the Wayne County Circuit Court before separate juries, petitioner was convicted of four counts of first-degree felony murder and arson of a dwelling house.

Petitioner's conviction arose from an incident which occurred in Detroit, Michigan on February 17, 1998. The evidence established that petitioner deliberately set fire to a multi-family dwelling that was owned by the co-defendant, Julia Wigley. During this fire,

1

four children who resided in one of the units died. Wigley lived in one of the units of the dwelling and was the landlord of the upstairs tenant. On the day in question, Wigley and one of her tenants, Nicole Ford, had argued over rent money that was owed to Wigley.

The main evidence against petitioner consisted of the confession that he made to the police. Petitioner told the police that Wigley offered him four dollars and a Rottweiler dog to set her house on fire in order to defraud the insurance company. Wigley took petitioner over to her house to show her what she wanted done. Wigley wanted petitioner to have the back door of the house burned "up top" and the front door to be burned inside. Wigley told petitioner that she put a can of gasoline in the basement of the dwelling. Petitioner left the premises and went to get his brother, Larry Allen, [a second co-defendant, *see infra*] to help him with the arson. Petitioner and his brother eventually returned to Wigley's dwelling. Petitioner and his brother agreed that they would take some items out of the house before setting fire to it. Petitioner and his brother removed a television, a VCR, some pictures off of a wall, and a mirror clock and placed them in their car. The two men returned to the flat, retrieved the gasoline, poured the gasoline, and lit the fire. As the two men ran out of the house, petitioner heard screams "that made us break our necks even more." Petitioner and his brother went back to his house, where they later learned on the television news that four children had died in the fire. Petitioner described the co-defendant's flat as being a "Big house, with a garage up to the back door. The word Jesus was painted on the garage door with exclamation marks." When asked whether Wigley mentioned whether anyone would

2

be in the house, petitioner acknowledged that she informed him that a man lived in the basement, but would probably be at work. When asked if Wigley mentioned anyone living in the upstairs flat, petitioner indicated that she had said something to "Bobbie" and he further acknowledged that the house "looked like a two-family flat." Petitioner admitted that when he went into the house, he heard a radio on downstairs. Petitioner said that if he knew children had been in the house, he would not have set the fire. (Tr. 8/31/1998, pp. 145-54).

Petitioner's brother, Larry Allen, testified against petitioner in exchange for being allowed to plead guilty to a reduced charge of second-degree murder with a sentence agreement of ten to twenty years. Allen testified that he went with petitioner to the house on Eastlawn. Allen testified that petitioner used keys to get inside of the house. Once inside, the two men went into the basement, where Allen saw some furniture. Allen acknowledged that it looked like someone was living in the basement. Petitioner then used a screwdriver to break into the downstairs flat. Allen testified that he and petitioner removed a television, a VCR, and some pictures from the house and took it to their car. Allen admitted that an outdoor light was turned on in back of the house. Allen and petitioner went back inside the house and retrieved a can of gasoline from the basement. Petitioner poured gasoline in the hallway and lit the fire. Allen heard a radio playing upstairs at the time that petitioner lit the fire. Whiling exiting the house, Allen heard a woman screaming. (Tr. 8/31/1998, pp. 170-83).

Petitioner's first-degree felony murder convictions were affirmed on appeal, although

3

his arson conviction was vacated on double jeopardy grounds. *People v. Johnson,* 215187

(Mich. Ct. App. Feb. 6, 2001); *reh. den.* 215187 (Mich. Ct. App. April 20, 2001); *lv. den.* 465

Mich. 882; 635 N.W. 2d 316 (2001).   Petitioner thereafter sought post-conviction relief,

which was denied by the trial court.  *People v. Johnson,* 98-3001 (Wayne County Circuit

Court, May 3, 2003); *reh. den.* 98-3001 (Wayne County Circuit Court, June 12, 2003).  The

Michigan appellate courts denied petitioner leave to appeal.  *People v. Johnson,* 249452

(Mich. Ct. App.September 4, 2003); *lv. den.* 469 Mich. 1002; 675 N.W. 2d 593 (2004).

Additional facts will be discussed when addressing petitioner's claims.  Petitioner now seeks

the issuance of a writ of habeas corpus on the following grounds:

> I. Mr. Johnson was denied his constitutional right to due process of law due
> to the trial court's abuse of discretion in refusing to give an instruction for the
> cognate lesser included offense of burning insured property, thereby
> preventing Mr. Johnson from proving the jury with his theory of the case or
> put forth his defense, thereby depriving him of his constitutional right to a fair
> trial.
>
> II. Mr. Johnson was denied his constitutional right to due process of law due
> to the misconduct of the assistant prosecuting attorney in remarks made to the
> jury during opening statements where the assistant prosecutor erroneously
> attributed quotations from Mr. Johnson's voluntary statement to the police
> which were offered in bad faith and not an accurate summary of the
> defendant's statements, or other evidence in the case, thereby
> mischaracterizing the evidence against Mr. Johnson and depriving him of his
> right to a fair trial.
>
> III. Mr. Johnson was denied his constitutional right to due process of law due
> to the ineffectiveness of trial counsel for: A) failing to object when
> appropriate; B) being argumentative in nature to the extent of having to be
> chastised by the court on numerous occasions in the presence of the jury; C)
> taunting and mocking witnesses; D) improper remarks to the jury during
> closing argument; E) opening the door for cross-examination of witness

4

Marilyn Allen regarding statements made by Mr. Johnson to her after the fire; and F) alienation of the jury through inappropriate cross-examination of witnesses.

IV. Mr. Johnson's right to effective assistance of counsel was deprived at the appellate level due to counsel's failure to raise all meritorious issues on appeal and adequately brief the issues presented to the court.

## II. STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the United States Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the United States Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because

5

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III. DISCUSSION

### A. Claim # 1. The trial court's failure to instruct on the lesser cognate offense of burning insured property.

Petitioner first claims that he was deprived of his right to have the jury instructed on the theory of his defense, when the trial court refused to give petitioner's jury an instruction on the lesser cognate offense of burning insured property, but gave the instruction for this offense to co-defendant Wigley's jury. Petitioner argues that his defense theory was that he merely aided and abetted the co-defendant in setting the fire to defraud the insurance company, that he did not know that the victims were in the house when he set the fire, and, therefore, that the prosecutor could not prove the intent necessary to convict petitioner of either first or second-degree murder. Petitioner contends that the trial court's refusal to instruct the jury on the cognate offense of burning insured property deprived him of the ability to present this theory to the jury.

The Michigan Court of Appeals found that the trial court's failure to instruct petitioner's jury on the cognate offense of burning insured property was harmless error, because petitioner failed to show that the outcome of the trial would have been different had the jury been given the instruction for this offense. The Michigan Court of Appeals noted that the offenses of arson of a dwelling house and burning insured property differ enough that convictions on both charges do not violate double jeopardy. The Michigan Court of

6

Appeals concluded that had petitioner's jury been instructed on this offense, they most likely would have convicted petitioner of both arson and burning insured property, as the co-defendant's jury had done. The Michigan Court of Appeals further rejected petitioner's claim that an instruction on burning insured property would have negated the intent element necessary for felony-murder. *People v. Johnson,* Slip. Op. at * 5.

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (citing *Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id. Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders,* 894 F. 2d 792, 797 (6th Cir. 1990); *see also Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002).

Nor can petitioner show that the failure of the trial court to instruct the jury on the cognate offense of burning insured property deprived him of the right to present a defense. Petitioner is correct in stating that a defendant in a criminal case is entitled to a jury

7

instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States,* 485 U.S. 58, 63 (1988). Petitioner, however, is unable to establish that but for the trial court's refusal to instruct the jury on the cognate offense of burning insured property, he would have been acquitted of these charges.

First, as the Michigan Court of Appeals indicated, arson of a dwelling and burning insured property are not mutually exclusive offenses. Under Michigan law, the elements of arson of a dwelling house are that: (1) a dwelling house was burned; (2) by, or at the urging of, or with the assistance of the defendant; and (3) the fire was willfully or maliciously set. *See Gardner v. Kapture,* 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003) (citing *People v. Lindsey,* 83 Mich. App. 354, 355; 268 N.W. 2d 41 (1978)). The elements of burning insured property are: (1) the burning; (2) of real or personal property; (3) which is insured at the time against loss or damage caused by fire; and (4) that the perpetrator acted with an intent to defraud the insurer. *See Bagnick v. Michigan Dept. of Corrections,* 37 Fed. Appx. 125, 128 (6th Cir. 2002). [1] The Michigan Court of Appeals has held that convictions for both arson of a dwelling house and burning insured property does not violate the Double Jeopardy Clause, in light of the different focus and different elements of the two offenses.

---

[1] While it is true that unpublished opinions carry no precedential weight, they often carry "persuasive weight." *United States v. Webber,* 208 F.3d 545, 551, n. 3 (6th Cir. 2000). Moreover, "[T]he fact that West Group is now digesting and publishing, in its 'Federal Appendix' series, opinions not selected by the Court of Appeals for formal publication, certainly puts a new twist on just what constitutes an 'unpublished' opinion." *See Shanks v. Wolfenbarger,* ----- F. Supp. -----; 2005 WL 22447484, * 5, n. 1 (E.D. Mich. September 14, 2005)(quoting *In Re Park,* 275 B.R. 253, 258, n. 9 (Bankr. E.D. Va. 2002)).

*See People v. Ayers*, 213 Mich. App. 708, 720-21; 540 N.W. 2d 791 (1995). In this case, the prosecution clearly established the elements of arson of a dwelling house at trial. Because petitioner could have been convicted of both arson of a dwelling house and burning insured property, he is unable to show that he would have been acquitted of the arson charge if the jury had been instructed on the cognate offense of burning insured property.

More importantly, petitioner is unable to establish that he would have been acquitted of the first-degree felony murder charges had the jury been instructed on the cognate offense of burning insured property. The elements of first-degree felony murder are:

> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Terry v. Bock*, 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002) (citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

In *People v. Reeves*, 448 Mich. 1, 3-4; 528 N.W. 2d 160 (1995), the Michigan Supreme Court held that the term 'arson' in Michigan's felony murder statute referred to the common-law crime of arson, namely, the malicious and voluntary or wilful burning of a dwelling house of another. In a subsequent case, the Michigan Supreme Court noted: "[I]n apparent response to *Reeves*, the [Michigan] Legislature amended the felony murder statute to provide that statutory, not common-law, arson is the relevant offense in felony murder cases." *See People v. Nowack*, 462 Mich. 392, 400; 614 N.W. 2d 78 (2000) (citing 1996 PA

20, now codified as M.C.L.A. 750.316(2)(a); M.S.A. 28.548(2)(a)). The effective date of the amendments to Michigan's felony murder statute was April 1, 1996. *Id.* Because the date of petitioner's offense was February 17, 1998, he would be subject to the amended felony murder statute. M.C.L.A. 750.316(2)(a) defines arson, for purposes of Michigan's felony murder statute, as "[a] felony violation of chapter X." M.C.L.A. 750.75; M.S.A. 28.270, burning insured property, is one of the enumerated felonies included under Chapter X of the Michigan Penal Code, "Arson and Burning." Because the charge of burning insured property could have served as the predicate felony offense for a felony murder conviction, petitioner is unable to show that he would have been acquitted of the felony murder charges had the jury chosen to convict him of burning insured property and had acquitted him of the arson of a dwelling charge.

Finally, the mere fact that petitioner may have set fire to the co-defendant's dwelling to assist her to defraud the insurance company would not negate the malice necessary to convict petitioner of first-degree felony murder. Both petitioner and his brother, Larry Allen, indicated that they removed a television, VCR, and several other items from the house prior to starting the fire. Petitioner acknowledged that the co-defendant told him that a man lived in the basement of the dwelling, although he would probably be at work. Petitioner also acknowledged that the house looked like a two family flat. Both petitioner and his brother heard a radio playing at the time they started the fire, further evidence that the dwelling was occupied by people. Allen admitted at trial that it looked like people lived

10

in the dwelling. Allen further indicated that the house's back outdoor light was turned on. Both petitioner and Allen heard a person screaming right after the fire, yet both took off running without offering any assistance. There was plenty of circumstantial evidence for the jury to infer that petitioner should have known that people were living in this dwelling and that he therefore acted, at a minimum, with a wanton indifference to the likelihood that death or great bodily harm would result from the setting of this fire, regardless of the underlying purpose for doing so. Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The prosecutorial misconduct claim.

Petitioner next contends that he was deprived of a fair trial by prosecutorial misconduct. Respondent contends that at least some of petitioner's prosecutorial misconduct claims are procedurally defaulted, because petitioner failed to object at trial. Petitioner appears to argue that any procedural default should be excused because of ineffective assistance of trial counsel. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of any of the defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). Moreover, respondent does not delineate which of petitioner's prosecutorial misconduct claims are defaulted and which are not. In this case, because "the procedural default issue raises more questions than the case on the merits," this Court will assume, for the sake of resolving the claims, that

11

there is no procedural default by petitioner and will decide the merits of these claims. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003)(quoting *Binder v. Stegall,* 198 F. 3d 177, 178 (6th Cir. 1999)).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that "the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). On habeas review, a court's role "is to determine whether the conduct was 'so egregious [as] to render the entire trial fundamentally unfair.'" *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.* (citing *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982).

Petitioner first claims that the prosecutor mischaracterized the evidence in this case by suggesting in her opening argument that petitioner's confession and Larry Allen's testimony would show that petitioner knew that there were children inside of the house, but that he disregarded them when he started the fire.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error

12

because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F. 3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, as mentioned when discussing petitioner's first claim, there was plenty of evidence presented at trial from which a rational trier of fact could conclude that petitioner set the fire in conscious disregard of the fact that persons might be present in the house. Petitioner admitted that he and his brother removed a television, a VCR, some pictures, and a mirror clock from the dwelling prior to lighting the fire. Petitioner admitted that he heard a radio playing when he entered the house. Petitioner admitted being told by Julia Wigley that a man lived in the basement. Petitioner acknowledged that the dwelling resembled a two family flat. Larry Allen's testimony mirrored that of the petitioner's confession, except he acknowledged that it looked like persons lived there and he also noted that a back light was turned on outside. Any argument by the prosecution, either in opening or closing argument, that petitioner acted with reckless disregard for the persons inside this house when he set the fire was clearly supported by reasonable inferences from the evidence presented at trial. For purposes of proving malice under the felony murder statute, it was

13

irrelevant whether petitioner was being indifferent to the safety of children or adults.

Petitioner also appears to argue that the prosecutor improperly sought to invoke sympathy for the child victims in this case. Even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002); *aff'd* 376 F. 3d 520 (6th Cir. 2004); *cert. den.* 125 S. Ct. 1645 (2005) (citing *Walker v. Gibson,* 228 F. 3d 1217, 1243 (10th Cir. 2000)). This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision (Tr. 09/03/1998, p. 78). *Id., See also Welch v. Burke,* 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999).

Petitioner also claims that the prosecutor vouched for the credibility of her witnesses. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell,* 181 F.3d 731, 737 (6th Cir. 1999). The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness'

14

credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improperly vouching for a witness. *Byrd v. Collins*, 209 F.3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002).

In the present case, petitioner points to only one or two comments by the prosecutor which arguably amounted to improper vouching. Because the prosecutor's conduct was not flagrant or repeated, petitioner is not entitled to habeas relief on this claim. Secondly, even if the remarks amounted to improper vouching, it did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell*, 250 F. 3d 388, 398 (6th Cir. 2001). Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence. (Tr., 09/03/1998, p. 80). This instruction by the court presumably cured any prejudice that may have arisen from any improper vouching. *Byrd v. Collins*, 209 F. 3d at 537.

Finally, Petitioner complains that the prosecutor made comments which suggested that petitioner had the specific intent to kill and was therefore guilty of first-degree premeditated murder, as opposed to first-degree felony murder. Michigan's first degree

15

felony murder does not require a specific intent to kill. *See Matter of Robinson*, 180 Mich. App. 454, 462; 447 N.W. 2d 765 (1989). By constrast, to convict a defendant of felony-murder in Michigan, the prosecution must prove that the defendant acted either with an intent to kill, an intent to do great bodily harm, or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm. *Terry v. Bock,* 208 F. Supp. 2d at 794. To the extent that the prosecutor led the jury to believe that they had to find that petitioner specifically intended to kill the victims in order to convict him of first-degree felony murder, this would only have worked to petitioner's benefit because the jury would have believed that they could not convict petitioner of first-degree felony murder unless they concluded that he specifically intended to kill the victims. Therefore, petitioner is not entitled to habeas relief on his second claim.

### Claims # 3 and # 4.  The ineffective assistance of counsel claims.

The Court will consolidate petitioner's third and fourth claims in the interest of judicial clarity. In his third claim, petitioner contends that he was deprived of the effective assistance of trial counsel. In his fourth claim, petitioner contends that he was deprived of the effective assistance of appellate counsel, in part, because his trial counsel continued to represent him on appeal.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so

16

deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005); *See also Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004).

Petitioner first complains that his trial counsel was ineffective because he was argumentative and belligerent with both the witnesses and the trial court. Overzealousness of counsel does not amount to the ineffective assistance of counsel. *See United States v. DiPaolo*, 804 F. 2d 225, 234 (2nd Cir. 1986). The mere fact that counsel might have been admonished by the trial court at times for being overly aggressive would be insufficient, in and of itself, to support a finding of ineffective assistance of trial counsel. *See Moore v. Scully*, 956 F. Supp. 1139, 1150-51 (S.D.N.Y. 1997). Although petitioner claims that trial counsel's questions and behavior alienated the jury, this claim is speculative, because petitioner has offered no evidence to prove this assertion. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Malcum v. Burt*, 276 F. Supp. 2d 664, 685 (E.D. Mich. 2003). Because there

17

is no evidence that trial counsel's behavior actually alienated the jury or negatively influenced their verdict, petitioner is not entitled to habeas relief on this part of his claim.

Petitioner next claims that trial counsel's deficient cross-examination of prosecution witness Marilyn Allen opened the door for the prosecutor to elicit damaging hearsay testimony from Allen on redirect examination. On redirect examination, Marilyn Allen testified that petitioner told her that someone had wanted him to burn a house down and that he, in fact, burned the house down. (Tr. 8/31/1998, pp. 129-30). Marilyn Allen's testimony, however, was cumulative of other evidence that petitioner had burned Wigley's house down at her request. Because there was additional evidence of petitioner's involvement in the arson in this case, petitioner was not prejudiced by the fact that trial counsel's cross-examination of Marilyn Allen may have opened the door for the prosecution to elicit this testimony on redirect examination. *See e.g. Hooper v. Mullin,* 314 F. 3d 1162, 1177 (10th Cir. 2002). For similar reasons, petitioner is unable to show that he was prejudiced by counsel's failure to object to improper refreshment of Allen's memory by the prosecutor.

Petitioner next claims that his trial counsel was ineffective for obtaining a ruling from the trial court that co-defendant Julia Wigley would not be permitted to testify before the trial court that co-defendant Julia Wigley would not be permitted to testify before petitioner's jury when she testified on her own behalf before her own jury. Petitioner claims that this prevented trial counsel from cross-examining Wigley about the theory of his case, namely, that she hired petitioner to burn her house down for the insurance proceeds.

The Court has reviewed Wigley's testimony in its entirety. (Tr. 09/02/1998, pp. 11-

131). The Court notes that prior to Wigley taking the stand, her trial counsel made a lengthy record outside of the jury's presence, in which he indicated that both he and Wigley's family had spoken with her and had advised her against testifying. (*Id.* at pp. 3-5). Wigley testified at length about her confrontation with Nicole Ford and admitted that she talked about burning the house down and actually went to get a gas can, although she claimed that she was intoxicated at the time, and was actually prevented from doing so by Barbara Allen and Jeffrey Wigley. According to Wigley, these two persons actually suggested that Wigley go talk with petitioner, who was referred to as "Jay", about her problem. (*Id.* at pp. 34-38). Wigley and Barbara Allen later went over to petitioner's house. At the house, Wigley made a comment about "[p]eople have a lot of nerve." (*Id.* at p. 47). Wigley, however, claimed that it was petitioner and Barbara Allen who talked about setting her house on fire. Wigley insisted that she told petitioner that she did not want to go along with the plan. Wigley claimed that petitioner became hostile or angry when she told him that she did not want to go along with the plan and the two argued. Wigley eventually gave petitioner one of her dogs. Wigley further claimed that petitioner made threats towards her and she and Allen argued. (*Id.* at pp. 47-53). Wigley denied giving petitioner the keys to her house or showing him where the gasoline can was. (*Id.* at p. 54). Wigley denied telling the police after the fire that she had hired petitioner to set her house on fire. (*Id.* at p. 68). Most importantly, Wigley claimed that the insurance on her house had expired and she denied that she would have received any benefits from the fire. (*Id.* at p. 72).

19

On cross-examination, Wigley conceded that she asked petitioner to set a door or "something of that nature" on fire to do "minimal damage" to her house "[s]o that they could move." (*Id.* at p. 105). Wigley again claimed that petitioner became upset because she would not agree to letting him burn her house down. (*Id.* at p. 107).

"[C]alling a co-defendant as a witness is a risky tactic. If the person testifies at all, the testimony may do more to inculpate than to exculpate the accused." *See Fletcher v. Briley,* 68 Fed. Appx. 716, 718 (7th Cir. 2003). In the present case, counsel was not ineffective in failing to allow petitioner's jury to hear Julia Wigley's testimony. Wigley pointed the finger at petitioner and claimed that she did not even want the house set on fire. Wigley testified that her insurance policy had expired, thereby hampering petitioner's claim that he set the house on fire to help Wigley obtain insurance proceeds. Wigley's testimony would also have provided petitioner's jury with additional evidence of malice aforethought necessary for a first-degree felony murder conviction. Wigley indicated that she and Barbara Allen went and spoke with petitioner after her confrontation with her tenants, during which time she had actually considered setting the house on fire. During her first conversation with petitioner, Wigley indicated that "people have a lot of nerve." This could raise the inference that Wigley wanted the house set on fire to retaliate against her tenants, not to collect insurance. This inference would be bolstered by Wigley's statement on cross-examination that she wanted petitioner to do minimal damage to the house so the victims would move. Certainly, Wigley's testimony could have allowed petitioner's jury to infer

20

that petitioner knew that persons lived at this house in order to support a finding of malice.

In light of the fact that Wigley "pointed the finger" at petitioner, trial counsel's decision not to have her testify before petitioner's jury was sound trial strategy. *See Robbins v. Mitchell*, 47 Fed. Appx. 380, 385 (6th Cir. 2002). Defense counsel's failure to have petitioner's co-defendant testify before his jury was therefore not ineffective assistance, as it was highly doubtful that her testimony would have inured to petitioner's benefit. *See Wickliffe v. Farley*, 809 F. Supp. 618, 622 (N.D. Ind. 1992). Finally, petitioner was not prejudiced by counsel's failure to have Wigley testify before his jury, as it is unlikely that the jury would have believed any exculpatory testimony offered by petitioner's co-defendant, in light of the additional evidence against petitioner, including his own confession. *See Timms v. United States*, 375 F. Supp. 2d 781, 786 (N.D. Ill. 2005).

Petitioner further claims that his trial counsel was ineffective for failing to call character witnesses on his behalf. Petitioner has failed to show that he was prejudiced by counsel's failure to call character witnesses on his behalf, because he has failed to offer any affidavits or other evidence which would establish that these proposed witnesses would have offered specific favorable testimony on his behalf. *See Tinsley v. Million*, 399 F. 3d 796, 810 (6th Cir. 2005). Moreover, for purposes of an ineffective assistance of counsel claim, counsel's failure to call character witnesses, even if deficient, will not prejudice the defendant if their testimony is unlikely to alter the outcome. *United States ex. rel. Williams v. Washington*, 863 F. Supp. 697, 704 (N.D. Ill. 1994). In this case, defense counsel's

21

failure to introduce character evidence was not prejudicial in light of the overwhelming evidence of defendant's guilt. *See Zambrana v. United States*, 790 F. Supp. 838, 843 (N.D. Ind. 1992). Therefore, petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claims.

Petitioner also claims that he was denied the effective assistance of appellate counsel, in part, because his trial counsel continued to serve as his attorney on appeal. The Sixth Circuit has recently held that a court should not use the presumed prejudice standard set forth in *Cuyler v. Sullivan,* 446 U.S. 335 (1980), in evaluating a claim of an alleged conflict of interest arising from a counsel's successive representation of a defendant at trial and on his or her direct appeal. *See Whiting v. Burt,* 395 F. 3d at 619. Instead, a court must apply the *Strickland* standard to determine whether a defendant was actually prejudiced by appellate counsel's ineffectiveness, even where that appellate counsel was also the defendant's trial counsel. *Id.*

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F. 2d 56, 59 (6th Cir. 1990). "Generally, only when ignored issues are clearly stronger than those

22

presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002)(internal quotations omitted). In fact, winnowing out weaker issues on appeal is actually "the hallmark of effective appellate advocacy." *Id.* (quoting *Smith v. Murray,* 477 U.S. at 536).

In this case, because petitioner has failed to establish that his prosecutorial misconduct claims were clearly meritorious, his appellate attorney was not constitutionally ineffective for failing to raise some of these prosecutorial misconduct claims on direct appeal. *See Hooks v. Ward,* 184 F. 3d 1206, 1222 (10th Cir. 1999). Likewise, because petitioner has failed to show that his trial counsel was ineffective, petitioner is unable to establish that counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on his appeal of right. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 883 (E.D. Mich. 2002). Therefore, petitioner is not entitled to habeas relief on his fourth claim.

## IV. **CONCLUSION**

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). When a district court

23

rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *See Johnson v. Smith,* 219 F. Supp. 2d at 885.

## V.   ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

_____
**HON. PAUL D. BORMAN**
UNITED STATES DISTRICT COURT

DATED:__SEP 3 0 2005_____

24